UNITED STATES *v.* NORTH AMERICAN TRANS-PORTATION & TRADING COMPANY.

NORTH AMERICAN TRANSPORTATION & TRADING COMPANY *v.* UNITED STATES.

APPEALS FROM THE COURT OF CLAIMS.

Nos. 319, 320. Argued April 30, 1920.—Decided June 1, 1920.

When the Government without condemnation proceedings appropriates with legislative authority private property for a public use, it impliedly promises to pay therefor, but in order that the Government be liable it must appear that the officer taking possession of the property is authorized so to do by Congress or by the official on whom Congress conferred the power. P. 333.

The Acts of March 3, 1899, c. 423, 30 Stat. 1064, 1070, and of May 26, 1900, c. 586, 31 Stat. 205, 213, making appropriations for quarters for troops, sufficiently authorize the Secretary of War to take land for this purpose, but vest no authority in a general commanding a department. *Held*, that the action of the general in taking possession of the land was tortious and no liability on the part of the Government was created until the action was approved by the

Secretary of War, and since this approval occurred within six years before the commencement of this suit the suit was not barred by § 156 of the Judicial Code. P. 333.

The President's order reserving a tract largely public land, "subject to any legal rights which may exist to any land within its limits" did not mean that private land actually occupied for a public use was not taken, but merely that the right to compensation was recognized, and, in any event, the continued occupation of the private land and the erection of buildings thereon was such an appropriation as would give rise to a cause of action against the Government. P. 334.

The right to bring a suit against the United States in the Court of Claims for private property taken for a public purpose without condemnation proceedings is not founded on the Fifth Amendment but on the existence of an implied contract to pay the value of the property as of the date of the taking, and interest may not be added, because of § 177 of the Judicial Code. P. 335.

While interest might be allowed in condemnation proceedings instituted by the United States against the owner of property taken for a public purpose, as compensation for the use and occupation of the land prior to the passage of the title, it cannot be recovered in a suit in the Court of Claims against the United States. P. 336.

53 Ct. Clms. 424, affirmed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Davis,* with whom *The Solicitor General* and *Mr. R. P. Whiteley* were on the brief, for the United States.

*Mr. Burt E. Barlow,* with whom *Mr. Abram R. Serven* was on the brief, for the North American Transportation & Trading Co.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

This suit was brought by the North American Transportation and Trading Company in the Court of Claims on December 7, 1906. The petitioner seeks to recover the

value of a placer mining claim situated on the public land near Nome, Alaska, which is alleged to have been taken by the Government on December 8, 1900, and also compensation for use and occupation thereof after that date. Ownership of the property by the company and the physical taking and continued possession of it by the Government were not controverted. The lower court found, also, that about July 1, 1900, General Randall, United States Army, commanding the Department of Alaska, took possession, as a site for an army post, of a large tract of public land which included the mining claim. The company yielded possession of the part occupied by it, being unable to withstand his authority; but at the same time it demanded compensation which General Randall promised would be paid. Use of the site for an army post was thereafter recommended by him to the Secretary of War. Pursuant to this recommendation, the President issued on December 8, 1900, an order by which the tract was reserved from sale and set aside for military purposes; and on December 20, 1900, the Secretary of War announced it as a public reservation, for the present under the control of the War Department. The tract has been used as an army post continuously since possession was first taken by General Randall. The buildings erected thereon are situated on that portion of the land which had been the company's placer claim; so that at no time since General Randall took possession of the land has the company been able to operate its claim or do any further mining work thereon.

The Government contended that, if on the facts there was a legal taking or other act entitling petitioner to recover compensation, the cause of action had accrued more than six years prior to the commencement of this suit; and that therefore under § 156 of the Judicial Code the petition should be dismissed. The Court of Claims found that the company's property was taken within the

six years; that is, on December 8, 1900, and that its then reasonable value was $23,800. It entered judgment for that amount (53 Ct. Clms. 424). Both parties appealed; the Government, on the ground that the right of recovery, if any, was barred; the company, on the ground that no compensation was allowed for the use and occupation between the date of the taking and the date of entry of judgment.

*First.* When the Government without instituting condemnation proceedings appropriates for a public use under legislative authority private property to which it asserts no title, it impliedly promises to pay therefor. *United States* v. *Great Falls Manufacturing Co.*, 112 U. S. 645; *United States* v. *Lynah*, 188 U. S. 445, 462, 465; *United States* v. *Cress*, 243 U. S. 316, 329. But although Congress may have conferred upon the Executive Department power to take land for a given purpose, the Government will not be deemed to have so appropriated private property, merely because some officer thereafter takes possession of it with a view to effectuating the general purpose of Congress. See *Ball Engineering Co.* v. *J. G. White & Co.*, 250 U. S. 46, 54–57. In order that the Government shall be liable it must appear that the officer who has physically taken possession of the property was duly authorized so to do, either directly by Congress or by the official upon whom Congress conferred the power.

The Acts of March 3, 1899, c. 423, 30 Stat. 1064, 1070, and May 26, 1900, c. 586, 31 Stat. 205, 213, making appropriations for barracks and quarters for troops, furnish sufficient authorization from Congress to take land for such purposes, so that the difficulty encountered by the claimant in *Hooe* v. *United States*, 218 U. S. 322, does not exist here. But the power granted by those acts was conferred upon the Secretary of War. Act of August 1, 1888, c. 728, § 1, 25 Stat. 357; Act of August 18, 1890, c. 797, § 1, 26 Stat. 316. It was for him to determine whether

the army post should be established and what land should
be taken therefor.   Compare *Nahant* v. *United States*, 136
Fed. Rep. 273; 153 Fed. Rep. 520; *United States* v. *Certain
Lands in Narragansett, R. I.*, 145 Fed. Rep. 654.   Power to
take possession of the company's mining claim was not
vested by law in General Randall; and the Secretary of
War had not, so far as appears, either authorized it or
approved it before December 8, 1900.   It was only after
the President reserved from sale and set aside for military
purposes the large tract of land in which the company's
mining claim was included that the Secretary of War took
action which may be deemed an approval or ratification of
what General Randall had done.   What he had done before
that date, having been without authority and hence
tortious, created no liability on the part of the Govern-
ment.   *Hijo* v. *United States*, 194 U. S. 315, 323.   Since the
cause of action arose after December 7, 1900, this suit was
not barred by § 156 of the Judicial Code.

The suggestion is made that, as the President's order
reserved the land "subject to any legal rights which may
exist to any land within its limits," the Secretary's action
thereafter was not a taking of the mining claim.   But
this clause and the reference to it in the announcement
made by the Secretary must, in view of the circumstances,
have meant merely that the right to compensation of
the company and of any others was preserved.   Further-
more, the suggestion if sound would not aid the Govern-
ment; it would result, at most, in slightly postponing the
date of the legal taking.   For the continued holding pos-
session of the land after the announcement of the Secre-
tary of War and the erection of buildings thereon by his
authority was such an appropriation as would, in any
event, give the right of action against the Government.

*Second.*   The company contends that it should receive,
in addition to the value of the property at the time of
the taking, compensation for the occupation and use

thereof from that date to the date of the judgment—a period of nearly twenty years during which the company was deprived of the use of its property. This contention. is based upon the decisions of many state courts that, upon the taking of private property for public uses, the owner is entitled to recover, besides its value at the time of the taking, interest thereon from the date on which he was deprived of its use to the date of payment.[1] In a number of cases in the lower federal courts also the landowner has been permitted to recover interest from the time of the taking; but in each such case a statute had provided in some form that the condemnation should be conducted according to the laws of the State in which the land was situated—and under the law of the State interest was recoverable. *United States* v. *Engeman*, 46 Fed. Rep. 898; *Town of Hingham* v. *United States*, 161 Fed. Rep. 295, 300; *United States* v. *Sargent*, 162 Fed. Rep. 81; *United States* v. *First National Bank*, 250 Fed. Rep. 299; *United States* v. *Rogers*, 257 Fed. Rep. 397; *United States* v. *Highsmith*, 257 Fed. Rep. 401. These conformity provisions which relate only to the laws of States, can have no application to lands in Alaska; nor can they affect proceedings brought in the Court of Claims.

The right to bring this suit against the United States in the Court of Claims is not founded upon the Fifth Amendment, *Schillinger* v. *United States*, 155 U. S. 163, 168; *Basso* v. *United States*, 239 U. S. 602, but upon the existence of an implied contract entered into by the United States. *Langford* v. *United States*, 101 U. S. 341; *Bigby* v. *United States*, 188 U. S. 400; *Tempel* v. *United States*, 248 U. S. 121, 129; *United States* v. *Great Falls Manufacturing Co.*, *supra*; *United States* v. *Lynah*, *supra*. And the contract which is implied is to pay the value of property as of the date of the taking. *Bauman* v. *Ross*,

---

[1] See cases collected in 15 Cyc., pp. 930, 931, and in 10 R. C. L., p. 163.

167 U. S. 548, 587; *United States* v. *Honolulu Plantation Co.*, 122 Fed. Rep. 581, 585; *Burt* v. *Merchants' Insurance Co.*, 115 Massachusetts, 1, 14. Interest may not be added because § 177 of the Judicial Code, re-enacting § 1091 of the Revised Statutes, declares that: "No interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the Court of Claims, unless upon a contract expressly stipulating for the payment of interest." *Tillson* v. *United States*, 100 U. S. 43. Congress, in thus denying to the court power to award interest, adopted the common-law rule that delay or default in payment (upon which, in the absence of express agreement, the right to recover interest rests), cannot be attributed to the sovereign. *United States* v. *North Carolina*, 136 U. S. 211, 216. That rule had theretofore been uniformly applied in our executive departments except where statutes provided otherwise. *United States* v. *Sherman*, 98 U. S. 565, 567–8. So rigorously is the rule applied, that, in the adjustment of mutual claims between an individual and the Government, the latter has been held entitled to interest on its credits although relieved from the payment of interest on the charges against it. *United States* v. *Verdier*, 164 U. S. 213, 218–219. This denial of interest, like the refusal to tax costs against the United States in favor of the prevailing party, *Stanley* v. *Schwalby*, 162 U. S. 255, 272; *Pine River Logging Co.* v. *United States*, 186 U. S. 279, 296, and the refusal to hold the United States liable for torts committed by its officers and agents in the ordinary course of business, *Crozier* v. *Krupp*, 224 U. S. 290, are hardships from which, with rare exceptions, *William Cramp & Sons Co.* v. *Curtis Turbine Co.*, 246 U. S. 28, 40–41, Congress has been unwilling to relieve those who either voluntarily deal with the Government or are otherwise affected by its acts.

The company argues that interest is allowed in condemnation proceedings, not *qua* interest for default or

delay in paying the value, but as the measure of compensation for the use and occupation during the period which precedes the passing of the title (see *Klages* v. *Philadelphia & Reading Terminal Co.*, 160 Pa. St. 386); and that collection of an amount, measured by interest, is not prohibited either by the statute limiting the powers of the Court of Claims or by the common-law rule which exempts the sovereign from liability to pay interest. *United States* v. *New York*, 160 U. S. 598, 622. This may be the theory on which interest should be allowed in compensation proceedings;[1] and it may be that, even in the absence of the conformity provision referred to above, interest could be collected as a part of the just compensation in condemnation proceedings brought by the Government. For, as suggested in *United States* v. *Sargent, supra,* such a proceeding is not a suit by the landowner to collect a claim against the United States, but an adversary proceeding in which the owner is the defendant and which the Government institutes in order to secure title to land. *Mason City & Fort Dodge R. R. Co.* v. *Boynton,* 204 U. S. 570. On the other hand, this suit brought in the Court of Claims is a very different proceeding. It is an action of contract to recover money which the United States is assumed to have promised to pay; and the assumed promise was to pay the value at the time of the taking. The suit is in effect an action on two counts—one for the value of the mining claim, the other for use and occupation after December 8, 1900, at the rate of $7,500 per year. If the company had brought the suit immediately after the taking, it clearly could not have recovered any amount for use and occupation; for a plaintiff suing in contract

---

[1] Compare *Moll* v. *Sanitary District*, 228 Illinois, 633, 636; *Lake Roen &c. Co.* v. *McLain Co.*, 69 Kansas, 334, 341–342; *Kidder* v. *Oxford*, 116 Massachusetts, 165; *Hamersley* v. *New York City*, 56 N. Y. 533, 537; *Sioux City R. R. Co.* v. *Brown*, 13 Nebraska, 317, 319; *Atlantic & Great Western Ry. Co.* v. *Koblentz*, 21 Oh. St. 334, 338.

can recover only on a cause of action existing at the time the suit was brought. The loss to the company of the use of $23,800, which is found to be the value of the mining claim when it was taken nearly twenty years ago, must be deemed to be due, in part, to its delay in instituting the suit, and, in part, to the delays of litigation for which it may have been largely responsible. But as, in either event, the loss of the use of the money results from the failure to collect sooner a claim held to have accrued when the company's property was taken, that which the company seeks to recover is, in substance, interest, and that Congress has denied to the Court of Claims power to allow.

Furthermore, if it is not interest which the company seeks, the facts found fail to supply the basis on which any claim in addition to that for the value of the property should rest. The petition states that the United States is indebted to claimant in addition to the $100,000, alleged to be the value of the property, the further sum of $7,500 per annum for the use and occupancy thereof from December 8, 1900. Except for this allegation the company did not, so far as appears, make any request of any kind in the court below in respect to an allowance for use and occupation. The court does not mention the subject in the opinion; and it is not referred to in the application for an appeal.

In *Shoemaker* v. *United States*, 147 U. S. 282, 321, and *Bauman* v. *Ross*, 167 U. S. 548, 598, to which both counsel refer, the point here decided was not involved, since the court held that under the express terms of the acts there in question the United States were not entitled to possession of the land until the damages had been assessed and actually paid.

The judgment below is

*Affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration and decision of this case.